# In the United States Court of Federal Claims

No. 26-1144
Filed: August 11, 2026

| | |
|---|---|
| FCN, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

*Jill McDowell*, Impresa Legal Group, Arlington, Virginia, for plaintiff.

**OPINION AND ORDER**

***SMITH*, Senior Judge**

In this bid protest**,** Plaintiff FCN, Inc. ("FCN") challenges the United States Defense Intelligence Agency's ("DIA") refusal to impose a stay under the Competition in Contracting Act ("CICA") after it filed a related action before the Government Accountability Office ("GAO"). Through its prime contractor, DIA excluded FCN from a task order for the provision of information technology products and services. FCN now moves for a temporary restraining order and a preliminary injunction under Rule 65 of the Court of Federal Claims ("RCFC"). *See* Pl.'s Mot. for TRO & Prelim. Inj., ECF No. 2. However, a recent decision issued by the United States Court of Appeals for the Federal Circuit leaves this Court unable to consider FCN's requested relief. For the following reasons, the Court **DENIES** FCN's motion, ECF No. 2.

## I. BACKGROUND

DIA awarded the Solutions for the Information Technology Enterprise III ("SITE III") prime contract HHM402-21-D-0097 to Invictus International Consulting, LLC ("Invictus"). *See* Compl., ECF No. 1 at ¶ 8. As an indefinite delivery, indefinite quantity contract ("IDIQ"), SITE III "provides centralized and synchronized acquisition of information technology capabilities" at DIA and the National Geospatial-Intelligence Agency ("NGA"). *Id.* Subcontractors, including FCN, compete for task orders under SITE III. *Id.* at ¶ 9. According to FCN, "DIA develops the evaluation criteria . . . issues RFQs, reviews quotes," and awards task orders. *Id.* at ¶ 11. On the other hand, Invictus only "obtains quotations from subcontractors . . . and transmits the quotations to DIA for agency review." *Id.* In November 2022, FCN entered into Subcontract No. SG106510 with Invictus to perform as a subcontractor under SITE III. *Id.* at ¶ 13. That subcontract provided

for an IDIQ contract in which individual task orders "separately funded and governed by its own statement of work and pricing." *Id.* at ¶ 14.

This matter concerns the Venice Request for Quotation ("Venice RFQ") under SITE III that sought "equipment from "Original Equipment Manufacturer ("OEM") Palo Alto Networks." *Id.* at ¶¶ 4–5. As a "Value-Added Reseller ("VAR") of hardware and software solutions," FCN provides services to federal defense and intelligence organizations. *Id.* at ¶ 12. In particular, FCN "is authorized to represent over 800 OEMs" including Palo Alto Networks. *Id.* at ¶¶ 5, 12. At some point, FCN submitted its quote for the Venice RFQ "using its Palo Alto Networks deal registration," which allegedly qualified as the lowest offer. *Id.* at ¶ 15. On July 20, 2026, Invictus informed FCN that DIA instructed it "to remove FCN" from the Venice RFQ. *Id.* at ¶ 16; *see also* Compl. Ex. 3, ECF No. 1-4.

Ten days later, FCN filed a bid protest at GAO contending that DIA unreasonably determined that it "had an organizational conflict of interest . . . or somehow violated [the agency's] mitigation plan" which led to its exclusion. Compl., at ¶ 17; Compl. Ex. 1, ECF No. 1-2 at 1. On August 5, 2026, counsel for FCN asked DIA if the agency directed a stay under CICA or if award or performance would continue despite its protest. *See* Compl. Ex. 2, ECF No. 1-3 at 6. DIA responded that it lacked legal authority to enforce a stay under CICA. *Id.* at 5. In DIA's opinion, CICA applies "strictly to the award or performance of a federal contract awarded by a federal agency." *Id.* As a subcontractor, FCN lacked privity with DIA, the agency could not compel Invictus to "pause its downstream procurement activities." *Id.* The agency also argued that CICA and related regulations "do not apply to subcontract protests," and that FCN "ignores the fundamental distinction between a federal procurement and a private subcontract dispute." *Id.*

DIA further represented that it would seek dismissal of FCN's bid protest action at GAO. *Id.* If GAO denied the agency's request, DIA would then "promptly issue a CICA stay stop work order or execute a CICA stay override and notify the GAO accordingly." *Id.* Later that day, FCN notified DIA that it would file an emergency action at this Court to enforce the CICA stay. *Id.* at 2–3. FCN characterized its dispute as one with DIA, not Invictus and that it did not file a "nonstatutory protest." *Id.* at 3 (citing 4 C.F.R. § 21.13). The company also warned that DIA's position toward imposing a stay "would effectively permit any agency to avoid a required stay simply by asserting that GAO lacks jurisdiction, and then continue performing until GAO decides otherwise." *Id.*

On August 7, 2026, DIA alerted FCN that it filed to dismiss the pending GAO action. *Id.* at 1. The agency also expected GAO to reach a decision by the following week of "whether FCN is a contractor awarded a Federal agency contract." *Id.* DIA again acknowledged that if GAO determined it retained jurisdiction to hear FCN's bid protest, the agency would order Invictus to stop performance and "request that Invictus likewise stay subject subcontract." *Id.*

## II. LEGAL STANDARDS

### A. Motion for Preliminary Injunction and for a TRO.

Under the Tucker Act, this Court may "award any relief that the court considers proper, including . . . injunctive relief." 28 U.S.C. § 1491(b)(2). Such injunctive relief includes preliminary injunctions and TROs, which are "extraordinary and drastic" measures that "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Loch Harbour Grp., Inc. v. United States*, 128 Fed. Cl. 294, 300 (2016); *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1345 (Fed Cir. 2018) (citations omitted). "The standards for determining whether to grant a temporary restraining order are the same as those that apply for a preliminary injunction." *Safeguard Base Operations, LLC v. United States*, 140 Fed. Cl. 670, 686 (2018). Courts will grant a preliminary injunction or TRO if the movant can show: (1) "a reasonable likelihood of success on the merits;" (2) "whether the moving party will suffer irreparable harm in the absence of a preliminary injunction; (3) whether the balance of hardships tips in the moving party's favor; and (4) the impact of a preliminary injunction on the public interest." *DexCom, Inc. v. Abbott Diabetes Care, Inc.*, 89 F.4th 1370, 1375 (Fed. Cir. 2024) (quoting *Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*, 25 F.4th 998, 1005 (Fed. Cir. 2022)). Movants must prove each factor by a preponderance of the evidence. *Safeguard*, 140 Fed. Cl. at 688.

In April 2026, the Federal Circuit lessened the threshold to obtain a preliminary injunction after an agency overrides a CICA stay. *See Life Sci. Logistics, LLC v. United States*, 172 F.4th 1357 (Fed. Cir. 2026). There, the court held that CICA provided no place "for courts to superimpose the judge-made four-factor test governing equitable relief as an additional burden on the protestor." *Id.* at 1366. Thus, Congress did not intend "to require a protestor whose automatic stay has been overridden by arbitrary and capricious government action" to prove the other preliminary injunction factors. *Id.* Instead, protestors need only demonstrate that an agency's decision to override a CICA stay was arbitrary and capricious. *See id.*

### B. Standard of Review in Bid Protests.

The Tucker Act confers jurisdiction on this Court "to render judgment on an action by an interested party objecting to . . . the award of a contract or any alleged violation of statute or regulation in connection with [a] procurement . . . " 28 U.S.C. § 1491(b)(1). Interested parties are "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *CS 321 East 2nd Investors, LLC v. United States*, 178 Fed. Cl. 471, 483 (2025) (citing *Percipient.AI v. United States*, 153 F.4th 1226, 1235 (Fed. Cir. 2025)).

Bid protests are reviewed under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *See* 28 U.S.C. § 1491(b)(4). Under the APA, a court will set aside a federal agency's decision that is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005); *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1329 (Fed. Cir. 2004). Agency action is arbitrary and capricious when "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Banknote Corp.*

*of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004). Such conduct lacks a rational basis when an agency failed to provide a "coherent and reasonable explanation of its exercise of discretion." *Id.* When challenging an award on the second ground, a plaintiff must show "a clear and prejudicial violation of applicable statutes or regulations." *Id.* Examples of arbitrary and capricious conduct include when a federal agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (alteration in original) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

In addition, a Court must find that the challenged agency action was prejudicial to the contractor. *Bannum*, 404 F.3d at 1351. "The second step is always required before setting aside a bid award, regardless of whether the error identified at the first step was arbitrary and capricious action or, instead, a violation of law." *Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 997 (Fed. Cir. 2021). A protester suffers prejudice upon a showing "that there was a substantial chance it would have received the contract award but for that error." *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (citation omitted).

## III. DISCUSSION

Before the Court reaches the merits of FCN's motion, it must determine whether FCN has statutory standing. *See Weeks Marine, Inc. v United States*, 575 F.3d 1352, 1358–59 (Fed. Cir. 2009). In addition to standing required by Article III of the United States Constitution, a protestor must demonstrate standing under the Tucker Act. Although the Federal Circuit held that statutory standing is no longer jurisdictional, it nonetheless remains a prerequisite to bringing suit. *See CACI, Inc.-Federal v. United* States, 67 F.4th 1145, 1151 (Fed. Cir. 2023) (discussing *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)). Statutory standing "requires that bid protests be brought by interested parties." *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1382 (Fed. Cir. 2012); *see* 28 U.S.C. § 1491(b)(1). In the Court of Federal Claims, an "interested party" under § 1491(b)(1) has long been limited to disappointed bidders. *See Am. Fed'n of Gov't Emps., AFL-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001). This Court's jurisdiction to hear CICA stay overrides also comes from § 1491(b)(1). *See Rice Servs., Inc. v. United States*, 180 Fed. Cl. 625, 633 (2026) (citing *RAMCOR Servs. Grp. v. United States*, 185 F.3d 1286, 1290 (Fed. Cir. 1999)).

An important wrinkle complicates FCN's protest: its status as a subcontractor under SITE III. Indeed, other Courts have addressed overriding CICA stays but those cases did not address subcontractors seeking relief. The Tucker Act only grants statutory standing to "by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). To resolve this issue, the Federal Circuit's decision in *Percipient.AI* is instructive.

There, a subcontractor filed a protest alleging that NGA did not fully test its software and thus violated its obligation to prefer commercial items to the maximum extent practicable under

10 U.S.C. § 3453(b)(1). 153 F.4th at 1229–30. After reversing this court's decision that Percipient.AI lacked statutory standing, the Federal Circuit reheard the case *en banc* and answered "who can be an interested party objecting to an alleged violation of statute or regulation in connection with a procurement or a proposed procurement under 28 U.S.C. § 1491(b)(1)?" *Id.* (cleaned up). On review, the court held that "interested parties" *do not* include subcontractors.

To persuade the court to hold otherwise, Percipient.AI proposed a definition that interested parties "must include *any* directly injured party who could have offered its product or service to meet the needs of the agency but for that agency's alleged legal violation." *Id.* at 1239 (emphasis added). It also urged the Federal Circuit to adopt the United States Court of Appeals for the District of Columbia's decision in *Scanwell Labs., Inc. v. Shaffer*, 424 F.2d 859 (D.C. Cir. 1979) and its progeny. *Id.* at 1234, 1240.[1] Under *Scanwell*, "one who makes a prima facie showing alleging [arbitrary and capricious abuses of discretion] on the part of an agency or a contracting officer has standing to sue under section 10 of the Administrative Procedure Act." 424 F.2d at 869. However, "Congress explicitly considered expanding standing to encompass subcontractors and *expressly declined* to do so." *Id.* at 1242–43 (emphasis added). That review of case law and other statutory regimes included CICA as well. *See id.* Indeed, "Congress was aware of how to invoke the APA standard" but it "specifically chose the term 'interested party' to define party standing." *Id.* at 1243; *see also id.* at 1234. Accordingly, an interested party is "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or failure to award the contract . . ." *Id.*

Notably, the court seemed to acknowledge certain cases granted subcontractors standing "where there was an agency-like relationship between the contractor and the government or more direct government involvement." *Id.* at 1242 (citing *Amdahl Corp. v. Baldrige*, 617 F. Supp. 501, 505 (D.D.C. 1985)). Nonetheless, the Federal Circuit rejected *Scanwell* and the district court case law entirely. *Id.* at 1243. The court also concluded that Congress again "intended interested parties to be defined more narrowly." *Id.* And since the court did not qualify lack of subcontractor standing to the specific circumstances that occurred in Percipient.AI's protest, this Court must abide by the Federal Circuit's unequivocal language. *See id.* at 1242–43.

Since *Percipient.AI*, other courts have been clear subcontractors lack statutory standing. *See CSI Aviation, Inc. v. United States*, 181 Fed. Cl. 143, 179 (2026) (finding "a plaintiff may allege facts constituting a cognizable injury-in-fact for the general purposes of constitutional standing" but still "not qualify as an interested party pursuant to 28 U.S.C. § 1491(b)(1)" as a subcontractor); *see also Int'l Bus. Sales & Servs. Corp. v. United States*, 181 Fed. Cl. 584, 591–92 (2026) (finding the "court in *Percipient.AI* did not pronounce any new rule," but rather "reaffirmed the long-standing rule that 'interested party' status is limited to '*disappointed bidders*.'") (emphasis in original). Nor does FCN's GAO protest grant it standing in this Court. *Threat Tec, LLC v. United States*, 2026 WL 699752 at *2 n.2 (Fed. Cl. Feb. 9, 2026) ("Plaintiff may be arguing its GAO protest automatically confers standing to challenge the CICA stay override" but "that is

[1] The *Scanwell* line of cases represented the jurisdiction and standard of review conferred to federal district courts to hear bid protests. *See Percipient.AI*, 154 F.4th at 1234, 1240. On January 1, 2001, the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, sec. 12(a), § 1491(b)(1), 110 Stat. 3870, 3874, ended district courts' bid protest jurisdiction and merged it into the Court of Federal Claims' now-exclusive jurisdiction. *Id.* at 1234, 1243.

difficult to square with the ordinary rule that this Court cannot hear protests from parties that lack a practical interest in the outcome."). In sum, the test for standing "is the same in CICA stay protests as in other bid protests." *Id.* (citing *Kropp Holdings, Inc. v. United States*, 63 Fed. Cl. 537, 550 (2005)).

In this case, FCN lacks standing in this Court to assert its claim. The Court recognizes FCN's substance over form argument that its claim concerns DIA's conduct, not Invictus. Compl. at ¶ 6; *see* ECF No. 7 at 3 (characterizing that DIA "controlled very substantive aspect of the Venice procurement). But given the Federal Circuit's categorical ruling, the Court cannot decide whether FCN is entitled to relief. *See Percipient.AI*, 153 F.4th at 1243.

## IV. CONCLUSION

For the forgoing reasons, the Court concludes that FCN lacks standing as a subcontractor to move this Court to enforce a CICA stay. Accordingly, the Court **DENIES** FCN's motion for a temporary restraining order and preliminary injunction, ECF No. 2.

**IT IS SO ORDERED.**

s/ Loren A. Smith

Loren A. Smith,
Senior Judge